COSTON v. KEALY.

Opinion delivered October 20, 1924.

ATTORNEY AND CLIENT—LIABILITY FOR FEE.—Where an attorney representing certain contractors explained to one holding an order from the contractors that the claim of the latter against an improvement district was unliquidated and that his fee must be paid before anything should be p..id on the order, and the holder of the order then filed it with the attorney for payment when the claim was collected, he will be held to have adopted the contract of employment of the attorney by the contractors, and the attorney's claim is entitled to priority.

Appeal from Mississippi Chancery Court, Osceola District; *J. M. Futrell,* Chancellor; reversed.

*James G. Coston,* for appellant.

The relation of attorney and client existed between Coston and Kealy, and the latter is estopped to claim priority over the former's claim for services rendered. When Kealy was in Coston's office, he knew at that time that there would not be enough realized on the claim of Sifers & Hunt to pay both himself and Coston in full, and when Coston told him that his fee must be paid first, that was the time for Kealy to object, if he intended to object at all. 103 Ark. 513, 145 S. W. 245; 22 Ark. 173. The instrument given to Kealy by the contractors was not an assignment of any interest in the contract between them and the improvement district or in the funds due them, but merely a bill of exchange. C. & M. Digest, §§ 7892-7893. As to the status of Coston, it is settled that he not only has a lien on the securities in his hands, but also that he is virtually an assignee of a portion of the judgment, or of the *debt or claim* equal to his fee. 33

Ark. 234-235; 149 Ark. 11, 231 S. W. 195; 154 Ark. 302;
87 N. Y. 559-560.

*Driver & Simpson,* for appellee.

There is no evidence that the relation of attorney and client existed between appellant and Kealy, and there is nothing to base a common-law lien upon, save a mere contract between the contractors and the district. Appellant was notified that the contractors had sold the debt to appellee long before the certificates were issued, and that they had no interest in the certificates when issued. Cases relied on by appellant are not in line with appellant's contention and do not support his theory.

HUMPHREYS, J. This suit was brought on July 2, 1923, by Sifers & Hunt, contractors, through their attorney, J. T. Coston, against the commissioners of the Osceola Grading & Oiling District No. 1, and its collector, to enjoin them from making additional payments to a part of the creditors to the exclusion of plaintiff's claim, alleging insolvency of the district. It seems that the commissioners and collector were paying all of the first collections from the assessments to some of the creditors whom they favored, instead of pro-rating the amount amongst all the creditors. The indebtedness of the district amounted to $15,000 and the aggregate assessment of benefits amounted to only $8,202.50, which represented the entire assets of the district with which to pay its liabilities.

On the 28th of July, 1923, Kealy filed an intervention, alleging that, on the 17th of February, 1923, the contractors made an assignment to him of their interest in the funds due the contractors from the district to the extent of $5,789.70. He further alleged the insolvency of the district, and that the commissioners were paying some of the creditors, with a prayer for a distribution of the funds of the district *pro rata* among the creditors.

On the 18th of September, 1923, Coston filed an intervention in the action, alleging his employment, the service rendered by him in adjusting the differences between the contractors and the district, the placing of

the contract and certificates in his possession by his client, and that they were still in his possession, concluding with a prayer that his lien for services be protected.

The cause was heard upon the pleadings and testimony, which resulted in a decree enjoining the commissioners from making any additional payments to the favored creditors of the district until all other creditors were paid an equal percentage of their claim. There was no appeal from the decree on this branch of the case. The court, however, denied the petition of J. T. Coston for priority of his claim over that of Philip J. Kealy and other creditors of Sifers & Hunt, and ordered the sum due said contractors to be distributed as follows:

| | |
|---|---|
| Ben H. Green | $ 268.50 |
| Chester Danehower | 72.00 |
| Mrs. Electra Buck | 50.00 |
| Philip J. Kealy | 5,789.70 then to |
| J. T. Coston | 1,500.00 |

From the order denying his intervention J. T. Coston has prosecuted an appeal to this court. Kealy did not appeal from or attack the order of the court allowing the other creditors of the contractors to share and share alike with him.

Counsel for appellant has made a succinct statement of the facts in this case responsive to the issue of priority of claims presented by the intervention, so we adopt it, in the main, as a statement of the case by the court. It is as follows:

"An improvement district was organized for the purpose of doing certain work on the streets of Osceola. The contract for the work was let to plaintiffs, Sifers & Hunt, and the work was done before the assessments were made. The total liabilities of the district aggregated about $15,000 and the total assessment of benefits was only $8,202.50. A dispute arose between Sifers & Hunt, contractors, and the improvement district as to the amount due them. Thereupon the contractors employed appellant, Coston, an attorney-at-law, to represent them in making an adjustment of the differences

between the contractors and the district, agreeing to pay him $1,500 for his services, and turned over to him the contract between the district and the contractors. Coston finally brought about an adjustment of the differences between the district and the contractors, and the district issued and delivered to Coston, as attorney for the contractors, fourteen certificates of indebtedness, aggregating the sum of $6,987.72. The original contract between the district and the contractors and the certificates issued by the district to the contractor in making the adjustment of their differences are still in Coston's possession.

February 17, 1923, the contractors gave to Philip J. Kealy an order on Coston "for the sum of $5,789.70, or on the drawer of this order, out of the amount now due and payable for work performed." Two days later the contractors issued the following order:

"February 19, 1923.

"Judge J. T. Coston,
"Osceola, Arkansas.

"Dear sir: You are hereby authorized to pay to Col. Philip J. Kealy or order, the sum of $5,789.70 of the funds now due and payable to the Arkansas Good Roads Company for work performed for the city of Osceola, Arkansas.        Yours very truly,

"THE ARKANSAS GOOD ROADS COMPANY,
"By E. I. Sifers."

When the above order was received by Coston, he wrote Kealy as follows:

"Mr. Philip J. Kealy,                    "March 12, 1923.
"221 Dwight Building,
"Kansas City, Mo.

"Dear sir: I beg to acknowledge receipt of your favor, inclosing letter from the Arkansas Good Roads Company for work done in Osceola.

"This is to advise you that I have placed the claim among my files, and when these funds are collected, or as fast as they are collected, I will be glad to remit, first paying claims that are entitled to priority, of course.

"Yours very truly,
"J. T. COSTON."

A few days later Kealy made a visit to Coston, who explained to him the status of the claim of the contractors against the district, and also explained to Kealy that his fee for services must be paid first. Thereupon Kealy replied, "Of course, you will have to be paid."

A little later Coston discovered that the commissioners of the improvement district were collecting the assessments and paying some of the creditors in full and nothing to others. Accordingly, on July 2, 1923, he commenced this action in behalf of the contractors against the commissioners, alleging the insolvency of the district and that the commissioners were paying the funds of the district to certain creditors and had announced their intention of paying all other indebtedness in full before paying the contractors anything, concluding with a prayer for an injunction, and that the funds of the district be paid out according to law and with due regard to the rights of the contractors and other creditors.

Appellant contends that he was entitled to deduct the amount of his fee from the sum due appellee on his order from Sifers & Hunt before paying any amount to appellee on said order. This contention is based upon the ground that the relationship of attorney and client existed between appellant and appellee. Appellee contends that no such relationship existed between him and appellant. We think the preponderance of the testimony establishes this relationship between them. When appellee presented his order to appellant, there was no money in the hands of appellant to pay it. All that appellant had in his possession was a contract between Sifers & Hunt and the commissioners of the district, which Sifers & Hunt had performed before any benefits had been assessed against the property in the district. The claim was unliquidated, and had not at that time been adjusted. The collection thereof depended largely on the ability and influence of appellant to induce the commissioners to make an equitable settlement with Sifers & Hunt. Appellant explained the nature and character of the claim to appellee, and informed him that his fee

of $1,500 must be paid before he could pay anything on the order. With a full understanding of the situation, appellee filed his claim with appellant for payment when the claim was collected. Appellee permitted appellant to proceed with the adjustment and to receive certificates of indebtedness for the claim, and raised no objection until after this suit was brought to enforce a *pro rata* collection on said certificates. Appellee adopted the contract of employment between the contractors and appellant by knowingly accepting the benefit of his legal services and by permitting him to continue these services after being advised of the nature and character of the claim and the amount agreed upon as a fee for adjusting same.

The court erred in denying the petition of appellant for priority over Kealy and the other creditors of Sifers & Hunt.

On account of this error the decree is reversed, and the cause remanded with directions to the court to allow appellant's claim as a prior and paramount claim out of the sum due Sifers & Hunt to the claims of appellee and the other creditors of said contractors.